**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| PORTLAND VANCOUVER JUNCTION RAILROAD, LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CLARK COUNTY, a political subdivision of the State of Washington,<br><br>Defendant. | No.<br><br>COMPLAINT |

## I. INTRODUCTION

1. This is a citizen suit brought under section 505(a)(1) of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365(a)(1), to address and abate Defendant's ongoing violations of the CWA. Plaintiff Portland Vancouver Junction Railroad, LLC ("PVJR" or "Plaintiff") seeks declaratory and injunctive relief to compel Defendant Clark County ("Defendant" or "County") to: (1) comply with the conditions of its CWA Phase I Municipal Stormwater National Pollutant Discharge Elimination System ("NPDES") Permit ("Phase I Permit"); and (2) cease unauthorized polluted discharges from its municipal separate storm sewer system ("MS4") to ditches, Curtin Creek, wetlands adjacent to Curtin Creek, and



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

downstream receiving waters. PVJR also seeks the imposition of civil penalties against the County for its longstanding and ongoing violations of sections 301 and 402 of the CWA (33 U.S.C. §§ 1311, 1342) and an award of costs, including attorney fees and expert witness fees.

2. The CWA prohibits discharges of pollutants from MS4s except as authorized under the terms of an NPDES permit. The County's MS4 discharges are regulated by the Phase I Permit. The Phase I Permit, *inter alia*, prohibits discharges from an MS4 that cause or contribute to the violation of state water-quality standards in any receiving water. The Phase I Permit also imposes numerous conditions on the County. The County's violations of the Phase I Permit and the CWA include: discharging polluted water from its MS4 system to ditches, Curtin Creek, wetlands adjacent to Curtin Creek, and downstream receiving waters, in violation of applicable water-quality standards; failing to require and implement controls to reduce the discharge of pollutants to its MS4 to the maximum extent practicable; failing to control discharges to and from its MS4; failing to trace pollution to its sources and require correction or removal of those sources of pollution; failing to maintain its MS4 facilities; and failing to accurately map its stormwater system.

## II. JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over PVJR's claims under section 505(a) of the CWA, 33 U.S.C. § 1365(a) and 28 U.S.C. § 1331 (federal question). The citizen-suit provision of the CWA authorizes suits for violations of "an effluent standard or limitation" under the CWA. 33 U.S.C. § 1365(a)(1). Those effluent standards include both the anti-discharge provision of 33 U.S.C. § 1311(a) and any "permit or condition thereof issued under section 1342." 33 U.S.C. § 1365(f).



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

4. Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365(a) and 1365(d), authorize the requested relief. The requested relief is also proper under 28 U.S.C. § 2201 (declaratory relief) and 28 U.S.C. § 2202 (injunctive relief). Violators of the CWA are also subject to an assessment of civil penalties. 33 U.S.C. §§ 1319(d), 1365(a), 40 C.F.R. §§ 19.1–19.4.

5. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2(a)(2), PVJR notified the County and the Clark County Public Works Department of the violations of the CWA and of PVJR's intent to sue by letter dated and postmarked April 3, 2026 ("Notice Letter"). A copy of the Notice Letter is attached to this Complaint as **Exhibit 1**. Pursuant to section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2(a)(2), PVJR provided copies of the Notice Letter to the Washington Attorney General's Office, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of Region 10 of the EPA, and the Director of the Washington Department of Ecology ("Ecology") by mailing copies to these individuals on April 3, 2026, via certified mail.

6. At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter, and the copies thereof, were issued as described in the preceding paragraph.

7. At the time of filing this Complaint, neither EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations addressed in the Notice Letter and herein.

8. The violations of the CWA complained of in the Notice Letter are continuing and/or are reasonably likely to continue to occur.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

9. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to PVJR's claims occurred within the Western District of Washington, and under 33 U.S.C. § 1365(c)(1), because the source of the violations described in this Complaint is in Clark County, Washington.

## III. PARTIES

10. PVJR is a Washington limited liability company with its principal place of business in Bellevue, Washington. PVJR is a member of the Clark County community where it operates a small, family-run short-line railroad between mileposts 0 and 33.1 of the Chelatchie Prairie Railroad. PVJR owns several properties throughout Clark County, including Clark County Property Identification Number 986064819 and Number 986061515 ("PVJR Properties"). The PVJR Properties are located to the east and west of the Chelatchie Prairie Railroad corridor, and south of the Curtin Creek Natural Area and wetlands adjacent to Curtin Creek. Each PVJR Property is separated from the railroad right-of-way and railroad adjacent drainage features ("Railroad Ditches") by raised roadbeds. The Railroad Ditches are on the east and west side of the railroad and are part of the County's MS4. Several County MS4 outfalls discharge to the Railroad Ditches upstream (south) of the PVJR Properties.

11. PVJR has standing to file suit because it is a member of the community that is affected by the County's mismanagement of its MS4 facilities and the pollution discharged therefrom. PVJR's property and environmental interests are directly and adversely affected by the County's polluted stormwater discharges which degrade downstream receiving waters, including wetlands, and Curtin Creek. The County's mismanagement of its MS4 system upstream of PVJR-owned properties has resulted in increased turbidity in the water within the Railroad Ditches that run adjacent to the railroad



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

operated by PVJR and to the PVJR Properties. The sediment/turbidity in the ditches creates operational hazards with respect to PVJR's railroad operations and has resulted in flooding on the PVJR Properties.

12. The County's mismanagement of its MS4 system near the PVJR Properties has also led the County to improperly attempt to shift responsibility for addressing this polluted water to PVJR, rather than properly identifying and controlling upstream sources of pollution.

13. Defendant Clark County is a county local government duly formed and organized under chapter 36.04 RCW. The county seat is located in Vancouver, Washington, with its official offices at 1300 Franklin, 6th Floor, Vancouver, Washington 98666. The County is a regulated MS4 permittee under the Phase I Permit and owns/operates MS4 facilities.

## IV. STATUTORY AND REGULATORY BACKGROUND

14. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant, by any person, from any point source to the waters of the United States, except where expressly authorized under a valid NPDES Permit issued by EPA or an EPA-delegated State permitting authority. 33 U.S.C. § 1311(a); *id.* §§ 1362 (12)(a), (7); 40 C.F.R. § 122.2.

15. Storm sewers, ditches, and channels are point sources that are subject to NPDES permitting requirements under the CWA and its implementing regulations. *See* 33 U.S.C. §§ 1311(a), 1342(p), 1362(12)(A); 40 C.F.R. § 122.2.

16. The CWA applies to discharges to "navigable waters," which are defined as "waters of the United States, including territorial seas." 33 U.S.C. § 1362(7). The Supreme Court has construed the term "waters of the United States" to encompass "only those



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

relatively permanent, standing or continuously flowing bodies of water forming geographical features that are described in ordinary parlance as streams, oceans, rivers, and lakes." *Sackett v. Env't Prot. Agency*, 598 U.S. 651, 671 (2023) (internal citations omitted).

17. Ditches may also meet the CWA's definition of waters of the United States if they are "relatively permanent, standing or continuously flowing bodies of water." 40 C.F.R. § 120.2(a)(3) (including tributaries within the definition of waters of the United States if those tributaries are "relatively permanent, standing or continuously flowing bodies of water").

**NPDES Permits for MS4 Discharges**

18. Section 402(p) of the CWA, 33 U.S.C. § 1342(p), establishes a NPDES permitting framework for municipal stormwater discharges like those from the County's MS4. 33 U.S.C. § 1342(a), (p). NPDES permits issued for MS4s must both: (1) "effectively prohibit non-stormwater discharges into the storm sewers," 33 U.S.C. § 1342(p)(3)(B)(ii); and (2) "require controls to reduce the discharge of pollutants to the maximum extent practicable, including management practices, control techniques and system, design and engineering methods, and such other provisions as . . . appropriate for the control of such pollutants." *Id.* 1342(p)(3)(b)(iii).

19. In Washington, Ecology has been delegated authority to issue NPDES permits other than permits for federally-owned facilities and permits on tribal lands. Ecology issued the Phase I Permit to designated MS4 operators, including the County. A copy of the Phase I Permit is attached to this Complaint as **Exhibit 2**. The Phase I Permit is a State Waste Discharge General Permit under NPDES that authorizes large and medium MS4 permittees to discharge stormwater into the waters of the United States, provided the permittee meets all permit conditions. Ex. 2 at 1–3. The current permit is effective August



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

1, 2024, and expires on July 31, 2029. The preceding Phase I Permit imposed substantially similar conditions.

20. The County is required to comply with the terms of the Phase I Permit with respect to its MS4 facilities. 33 U.S.C. § 1342(p); Ex. 2 at 5 (condition S3.A).

21. The Phase I Permit imposes obligations on the County, including but not limited to requirements for complying with water-quality standards (condition S4), managing stormwater (S5), mapping the stormwater system (condition S5.C.2), identifying and resolving illicit discharges (condition S5.C.9.d), maintaining stormwater systems (condition S5.C.10), and General Conditions (condition G).

## <u>Phase I Permit Conditions</u>

### Compliance with Water-Quality Standards (Condition S4)

22. Condition S4 of the Phase I Permit requires the County to comply with all applicable state water-quality standards. Ex. 2 at 7. The County is required to "reduce the discharge of pollutants to the Maximum Extent Practicable," and "shall use All Known, Available, and Reasonable methods of prevention, control and Treatment (AKART) to prevent and control pollution of water of the State of Washington." *Id.* at S4.C, S4.D.

23. The Phase I Permit does not authorize a discharge which would be a violation of Washington State Surface Water Quality Standards (chapter 173-201A WAC), Groundwater Quality Standards (chapter 173-200 WAC), Sediment Management Standards (chapter 173-204 WAC), or human health-based criteria in the National Toxics Rule (40 C.F.R. 131.45).

24. A permittee may remain in compliance with condition S4 despite any discharges prohibited by S4.A or S4.B, when the permittee notifies Ecology when the permittee becomes aware of a discharge from an MS4 owned or operated by the permittee



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

that is causing or contributing to a known or likely violation of water-quality standards. Ex. 2 at 7 (condition S4.F). If Ecology finds a violation of water-quality standards, Ecology will notify the permittee that an adaptive management response is required. *Id.* at 8. Following notification, the permittee shall implement an adaptive management response which requires the Permittee to first review its Stormwater Management Program and submit a report to Ecology, including but not limited to, describing the Best Management Practices ("BMPs") that are currently being implemented to prevent or reduce any pollutants that are causing or contributing to the violation of water-quality standards and evaluate the effectiveness of additional BMPs. *Id.*

**Stormwater Management (Condition S5)**

25. The County is required to design and implement a Stormwater Management Program ("SWMP") to "reduce the discharge of pollutants from MS4s to the [Maximum Extent Practicable], meet state [All Known, Available, and Reasonable methods of prevention, control, and Treatment] requirements, and protect water quality." *Id.* at 10 (condition S5.B).

26. The County is required to update its SWMP "at least annually for submittal with the Permittee's Annual Report to Ecology (condition S9 – Reporting Requirements)." *Id.* (condition S5.C.A.1).

27. The Phase I Permit requires the County's SWMP to include a program to prevent and control the impacts of runoff from new development, redevelopment, and construction activities. *Id.* at 15–19.

28. The Phase I Permit requires the County to implement a Stormwater Management for Existing Development Program to prevent or reduce impacts to waters of the State caused by discharges from the MS4, and to implement a program to reduce



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

pollutants in runoff from areas of existing development that discharge to the MS4. *Id.* at 22–23.

29. The County must identify publicly and privately owned institutional, commercial, and industrial sites which have the potential to generate pollutants to the Permittee's MS4, inspect such sites, and implement an enforcement policy to require sites to come into compliance with stormwater requirements within a reasonable time period. *Id.* at 24–26.

30. The Phase I Permit requires the County to reduce pollutants in runoff from areas that discharge to the MS4 by applying operational, structural source control, and treatment BMPs; enforcing proper BMPs on commercial, industrial, and multifamily properties; and enforcing water-quality ordinances. *Id.* at 24–26.

**MS4 Mapping and Documentation (Condition S5.C.2)**

31. The Phase I Permit requires the County to maintain mapping data for a list of identified features, including, but not limited to: (a) MS4 outfalls and known MS4 discharge points; (b) stormwater treatment and flow control BMPs/facilities owned or operated by the County, including all connections between these BMPs/facilities and tributary conveyances; (c) tributary conveyances to all known outfalls and discharge points with a 24-inch nominal diameter or larger; and (d) existing, known connections greater than or equal to eight inches in nominal diameter to tributary conveyances. *Id.* at 12 (S5.C.2).

**Illicit Connections and Illicit Discharges Detection and Elimination ("IDDE") Program (Condition S5.C.9)**

32. The Phase I Permit requires an ongoing IDDE program "designed to prohibit non-stormwater discharges, prevent, detect, characterize, trace, and eliminate illicit connections and illicit discharges into the MS4," including pollutants entering from



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

interconnected systems. *Id.* at 26 (condition S5.C.9). The permit requires the County to trace pollutants in its MS4 and identify their sources, not simply attribute them to the first downstream landowner. *Id.*

33. According to Ecology's "2020 Illicit Connection and Illicit Discharge Field Screening and Source Tracing Guidance Manual," a compliant IDDE program must: (1) treat each observed high-turbidity discharge as a hypothesis-driven investigation; (2) systematically trace upstream using mapping, targeted sampling, and physical inspection; and (3) distinguish on-site from off-site contributions before assigning responsibility.[1]

34. The County's SWMP, which the County is required to implement under condition S5.A of the Phase I Permit, requires the County to trace a suspected illicit discharge or connection back to its source to identify the problem.

**Maintenance of MS4 Facilities (Condition S5.C.10)**

35. Condition S5.C.10 requires the County to implement and document a program to regulate maintenance activities and conduct maintenance activities to prevent or reduce stormwater impacts. Ex. 2 at 31 (condition S5.C.10).

36. The Phase I Permit requires each Permittee to "implement maintenance standards that are as protective, or more protective, of facility function than those specified in the Stormwater Management Manual for Western Washington (SWMMWW), or a Phase I program approved by Ecology." *Id.* (condition S5.C.10.a).

37. The County shall implement a program to annually inspect all stormwater treatment and flow control BMPs/facilities owned or operated by the County and implement

[1] King County & Washington Department of Ecology, *Illicit Connection and Illicit Discharge Field Screening and Source Tracing Guidance Manual* (May 2020), available at https://www.wastormwatercenter.org/wp-content/uploads/2020_ICID_Manual_final_20200507-1.pdf.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

appropriate maintenance action(s) in accordance with adopted maintenance standards. *Id.* at 32 (condition S5.C.10.c).

38. The County shall "implement practices, policies, and procedures to reduce stormwater impacts associated with runoff from all lands owned or maintained by the [County], and road maintenance activities under the functional control of the [County]." *Id.* at 34 (condition S5.C.10.e).

**General Conditions (Conditions G1, G3, G4, G6, G12, and G20)**

39. Pursuant to General Condition 1 (G1) "[a]ll discharges and activities authorized by this Permit shall be consistent with the terms and conditions of this Permit." *Id.* at 66 (G1).

40. In regard to spills and discharges, the general conditions require that "[i]f [the County] has knowledge of a discharge, including spill(s), into or from a MS4, which could constitute a threat to human health, welfare, or the environment, the [County] shall" take appropriate action to correct or minimize those threats. *Id.* (G3).

41. The intentional bypass of stormwater from all or any portion of a stormwater treatment BMP whenever the design capacity of the treatment BMP is not exceeded, is prohibited unless certain conditions are met. *Id.* (G4).

42. The general conditions require the County to "take all reasonable steps to minimize or prevent any discharge in violation of [the Phase 1] Permit, which [have] a reasonable likelihood of adversely affecting human health or the environment." *Id.* at 67 (G6).

43. A violation of any term or condition of the Phase I Permit is grounds for revocation of coverage. *Id.* at 69 (G12).



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

44. If the County fails to comply with any of the terms and conditions of the Phase I Permit, it must notify Ecology within 30 days of becoming aware of the non-compliance through a G20 Non-Compliance Notification (G20 Notification). *Id.* at 72 (G20). Additionally, the Phase I Permit requires the County to "[t]ake appropriate action to stop or correct the condition of non-compliance." *Id.*

## V. FACTUAL ALLEGATIONS

### County MS4 Facilities

45. Clark County owns and operates the MS4—a municipal separate storm sewer system. The MS4 collects pollutants and precipitation runoff from the area of service and conducts the pollutants and stormwater to numerous points of discharge to navigable waters in Clark County, including Curtin Creek.

46. Figure 1, below, is a copy of an image produced by the County's geographic information system (GIS) mapping[2] of the stormwater system maintained by Clark County in the relevant geographic area. Figure 1 shows that the County's MS4 facilities include, among other things, the Railroad Ditches that parallel the Chelatchie Prairie Railroad corridor in the vicinity of the PVJR Properties in Vancouver, Washington (as depicted in orange dashed lines in Figure 1), an outfall from NE 99th Street to the West Railroad Ditch, an outfall from North 72nd Street to the West Railroad Ditch, and discharge points from the Railroad Ditches to Curtin Creek.

[2] The County's GIS mapping of utilities is available at https://gis.clark.wa.gov/mapsonline/?site=Utilities&ext=1. Figure 1 was produced by accessing this website on September 2, 2026 and selecting the mapping layer for "Stormwater System Maintained by Clark County (detailed)."



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372




**Figure 1:** GIS mapping of Clark County's stormwater system.

47. The properties adjacent to the West Railroad Ditch include private industrial uses, including construction companies. At least two culverts outfall from such industrial properties into the West Railroad Ditch.

**<u>The Receiving Waters</u>**

48. The West Railroad Ditch has a relatively permanent flow into Curtin Creek. Water is conveyed from the West Railroad Ditch to the East Railroad Ditch through a culvert in the northern portion of Figure 1. Water then flows through both Railroad Ditches and discharges into Curtin Creek.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

49. Curtin Creek is a relatively permanent water with a continuous surface connection with Salmon Creek, which is a tributary of, and maintains a continuous surface connection with Lake River, a traditional navigable water. According to the EPA, Curtin Creek, Salmon Creek, and Lake River are each a water of the United States.

50. All surface waters of the state are, at a minimum, to be protected for the designated uses of salmonid spawning, rearing, and migration. WAC 173-201A-600(1).

51. In salmonid spawning, rearing, and migration habitat, "turbidity shall not exceed: 10 [nephelometric turbidity units ("NTU")] over background when the background is 50 NTU or less; or a 20 percent increase in turbidity when the background turbidity is more than 50 NTU." WAC 173-201A-200(1)(e).

52. Washington State water-quality standards establish the beneficial uses for Salmon Creek and its tributaries as core summer salmonid habitat and salmonid spawning, rearing, and migration. WAC 173-201A-602. Because Curtin Creek and the Railroad Ditches are tributaries of Salmon Creek, they are also subject to the water-quality standards for core summer salmonid habitat. WAC 173-201A-600(1)(a)(iii).

53. In core summer salmonid habitat "turbidity shall not exceed: 5 NTU over background when the background is 50 NTU or less; or a 10 percent increase in turbidity when the background turbidity is more than 50 NTU." WAC 173-201A-200(1)(e).[3]

54. A 2007 Water Quality Effectiveness Monitoring Report prepared by Ecology with Clark County and other stakeholders includes the raw data that the County collected from the Curtin Creek monitoring station from 1999 to 2007. Most of the turbidity readings fell below 10 NTUs, with the highest reading (12.3 NTUs) occurring in 2007.

[3] *See* Table 200(1)(e).



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

**The County's Maintenance of its MS4 Facilities**

55. The County has failed to maintain its MS4 facilities.

56. As early as 2018, the County observed, documented, and knew about flooding and stormwater infrastructure failure and highlighted inadequacies of the existing infrastructure in and around the PVJR Properties.

57. On June 13, 2018, County staff members transmitted the "Clark County Railroad drainage system near Curtin Creek Enhancement Area" ("2018 Technical Memo") to County staff members and consultants working on drainage issues. A copy of the 2018 Technical Memo is attached to this Complaint as **Exhibit 3**.

58. The 2018 Technical Memo describes a meeting on April 16, 2018, where County staff members from the County's Clean Water Program and Development Engineering department met to discuss "the railroad's drainage issues and concerns," Ex. 3 at 3, including "excessive ponding against the upstream railroad embankment at the existing 24 inch culvert during large rainfall/runoff events" and the possibility that "backed-up stormwater runoff could potentially cause flooding problems further south at NE 99th Street," *id.* at 4. Federal railroad safety regulations require drainage and water-carrying facilities under or immediately adjacent to the raodbed to be maintained and kept free of obstruction to accommodate expected water flow. 49 C.F.R. § 213.33.

59. On May 22, 2018, County staff members conducted a site visit to gather data on three culverts in the County's drainage system near the PVJR Properties, including a 24[inch] culvert that staff noted was a potential cause of "ponding against the embankment."

60. The 2018 Technical Memo states that County staff "completed a brief investigation of the above drainage system, which serves as an outfall ditch for surrounding properties that are undergoing development." *Id.* at 1. The memo "describes that



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

investigation, completes some preliminary, qualitative analysis, and makes suggestions on potential drainage system improvements." *Id.*

61. The 2018 Technical Memo acknowledges that the Railroad Ditches had insufficient capacity to convey all of the County stormwater being received, that water was discharging overland from the Railroad Ditches, and that water from this system was eventually discharging to Curtin Creek. In particular, County staff made the following observations about the apparent flow patterns in the area:

> There appears to be a lack of a defined ditch along the northern boundary between the high point and Curtin Creek. It appears that water may shed northward overland as shown in red instead of traveling east parallel with the tracks as shown in blue. Along that flow path, there is a low area that appears to cause shallow ponding of runoff before overflowing eastwards to Curtin Creek.

*Id.* at 5–6.

62. The 2018 Technical Memo includes the below illustration (Figure 2) that depicts staff's observations about flow patterns in the area, "[f]ollowing the drainage from the north of the tracks." *Id.*




**Figure 2:** Illustration of County's drainage flow patterns from 2018 Technical Memo.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

63. The same area is depicted in the satellite image below:




**Figure 3:** Satellite image of the same area depicted in Figure 2.

64. The 2018 Technical Memo presented options for addressing overflow and ponding. The County opted for "No change" instead. *Id.* at 10.

65. Since 2018, the County has not modified or improved this portion of its MS4, resulting in flooding and ponding and polluted discharges into Curtin Creek.

**<u>The County's Failure to Identify and Correct Sources of Pollution</u>**

66. In December 19, 2023, the County filed a G20 Notification with Ecology. A G20 Notification is a requirement of the Phase I Permit to notify Ecology of non-compliance with the terms and conditions of the Phase I Permit. Ex. 2. at 72. Non-compliance with the terms and conditions of the Phase I Permit is a violation of the CWA. The December 19, 2023, G20 Notification indicated that the County was not in compliance with several conditions of the Phase I Permit. The County blamed development activities on the PVJR Properties for its non-compliance, and specifically for turbid discharges resulting in "a



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

violation of state water quality standards." PVJR disputes the statements in the G20 Notification attributing the County's non-compliance to PVJR.

67. In developing the G20 Notification, the County did not investigate the source of the turbidity, trace the turbidity in its MS4 and identify its sources, conduct sampling upstream of the PVJR Properties, or distinguish on-site from off-site contributions before assigning responsibility.

68. On January 4, 2024, the County filed another G20 Notification with Ecology alleging that the development activities on the PVJR Properties had resulted in an "illicit connection" to the County's stormwater facility at Curtin Creek and an "illicit discharge" of untreated stormwater.

69. On January 17, 2024, Ecology asked Clark County for additional information regarding the January 4, 2024 G20 Notification. On February 16, 2024, the County responded. Like the previous G20 Notification, this notification focused exclusively on the PVJR Properties as a potential contributor of sediment and did not address other potential offsite sources, upstream tracing, or any other steps in the mandatory IDDE process.

70. When the County notified Ecology of its violations of the Phase I Permit, it did not disclose or address pollutant contributions entering the County's MS4 from any other location upstream of the PVJR Properties.

**The County's Exceedances of Water-Quality Standards**

71. In April of 2024, PVJR hired a consultant to collect water-quality monitoring data showing turbidity readings at various locations. PVJR's turbidity readings confirmed PVJR's position that turbidity issues identified by the County in its G20 Notification and



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

attributed to PVJR were caused by off-site sources. The following samples were collected within the County's MS4 facilities:[4]

1) Upstream County Outfall – NE 99th Street
   a. Location (approximate): 45.693990, -122.594780
   b. Description: Located along NE 99th Street on the west side of the Barberton corridor. This is a County MS4 discharge point where stormwater from County-owned conveyances enters the west ditch system immediately adjacent to the County-owned railroad right-of-way (Clark County West Railroad Ditch).
   c. Observed turbidity measurements:
      i. May 22, 2024 – over 250 NTU
      ii. April 30, 2024 – 2,368 AU (instrument maxed out)
2) Clark County North 72nd Street Culvert
   a. Location (approximate): 45.697409, -122.593207
   b. Description: Culvert conveying stormwater to the Clark County West Railroad Ditch.
   c. Observed turbidity measurements:
      i. April 25, 2024 – 32.9 NTU
      ii. November 11, 2024 – 55.1 NTU
      iii. January 10, 2025 – 38.2 NTU

---

[4] Where the field instrument reported turbidity in NTU, PVJR reports those values below in NTU. For several extreme events, however, the meter could not read above 800 NTU. For those events, PVJR reports either "over 800 NTU" or the instrument's AU output, depending on the form of the field record. "AU" refers to Attenuation Unit and is an alternate method of measuring turbidity at very high levels. In this context, the AU readings and the "over 800 NTU" readings both show turbidity above the meter's NTU range and therefore extreme event conditions far above the applicable standard.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

iv. February 19, 2025 – 98 NTU

3) Clark County West Railroad Ditch

a. Location (approximate): 45.697614, -122.593123

b. Description: County drainage ditch running parallel to the Chelatchie Prairie Railroad on the west side of the railroad, upstream and adjacent to the PVJR Properties. This drainage ditch shows significantly elevated levels of turbidity upstream of the PVJR Properties.

c. Observed turbidity measurements:

i. December 7, 2024 – 1,940 AU

ii. December 17, 2024 – 1,707 AU

iii. January 4, 2025 – 42.2 NTU

iv. February 1, 2025 – 26.9 NTU

v. April 8, 2025 – 38.6 NTU

vi. November 5, 2025 – 76.9 NTU

vii. December 9, 2025 – over 800 NTU

viii. March 11, 2026 – over 800 NTU

ix. April 15, 2026 – over 800 NTU.

x. April 22, 2026 – over 800 NTU.

72. Additionally, on March 12, 2025, Ecology conducted a site visit and obtained water samples at several locations within the County's MS4 facilities and around the PVJR Properties.[5] Ecology identified significant turbid contributions upstream (off-site) of the PVJR Properties.

[5] Dep't of Ecology, Construction Stormwater General Permit Inspection Report, Eric Temple, Inspection dated March 12, 2025.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

73. In the West Railroad Ditch upstream of PVJR's property, Ecology measured turbidity at 37.7 NTU.

74. Ecology also observed a "second contributing stormwater inlet to the West Channel" and "observed significant turbid contributions" upstream of the PVJR Properties. At this site, Ecology measured turbidity at 233 NTU.

75. Upstream of the PVJR Properties, Ecology measured the turbidity at 403 NTU.

76. On or near the PVJR Properties, Ecology measured slightly reduced turbidity of 361 NTU as compared to measurements taken upstream.

77. On information and belief, the elevated turbidity measurements described above within the County's MS4 resulted in discharges of pollutants to wetlands and waters of the United States, including Curtin Creek and adjacent wetlands, that exceeded applicable water-quality standards.

78. PVJR alerted the County of the upstream turbid discharges on, among other dates, September 4, 2024, September 25, 2024, October 14, 2024, October 18, 2024, March 27, 2025, April 10, 2025, and June 9, 2025. The County did not take any action to trace the source of the pollution or take appropriate action to correct, minimize, or mitigate the threat to the environment.

79. On information and belief, the County has failed and is continuing to fail to implement adequate BMPs, management practices, and pollution controls equivalent to the AKART standard. The failure to implement adequate stormwater controls, BMPs, and management practices is evidenced by the exceedances of turbidity at the NE 99th Street outfall, the North 72nd Street outfall, and within the Railroad Ditches.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

**<u>The County's Inaccurate MS4 Map</u>**

80. Clark County inventories its MS4 in a GIS database. As of April 11, 2024, a GIS map maintained on the county's website, labeled "Stormwater System Maintained by Clark County," identified the Railroad Ditches as part of its stormwater system. Yet on April 17, 2024, Kevin Tyler, a County employee, sent an email to Eric Temple, president of PVJR. In that email, Mr. Tyler stated that no ditches "existed in the configuration shown in the GIS layer." Yet, as of September 2, 2026, the GIS map maintained on the County's website still shows the same ditches in the same configuration, with discharge points into Curtin Creek. See Figure 1.

81. The County's maps are also inaccurate because the same map maintained on the County's website did not show an existing 24-inch concrete culvert that conveys water from the West Railroad ditch to the East Railroad ditch where one exists.

82. The County has improperly relied and continues to rely on inaccurate stormwater maps to permit upstream development and allow untreated stormwater discharges from the Clark County North 72nd Street outfall and the NE 99th Street outfall to exit the MS4 system, without prior treatment.

## VI. CLAIMS FOR RELIEF

**<u>First Cause of Action</u>**

**Unauthorized and Permit Non-Compliant Discharges of Pollutants**

**(Violations of 33 U.S.C. §§ 1311 and 1342)**

83. PVJR realleges and incorporates by reference each and every allegation set forth in the paragraphs above.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

84. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant, by any person, from any point source to the waters of the United States, except where expressly authorized under a valid NPDES Permit.

85. The Phase I Permit does not authorize discharges to waters of the state that cause or contribute to exceedances of the water-quality standards established by Ecology.

86. Since April 2024, turbidity measurements taken within the Railroad Ditches upstream of the PVJR Properties, at the County's NE 99th Street outfall and at the North 72nd Street outfall have repeatedly and materially exceeded, and will continue to exceed, the applicable water-quality criteria for turbidity.

87. The West Railroad Ditch has a relatively permanent flow.

88. The Railroad Ditches discharge to Curtin Creek, which is a water of the United States.

89. In violation of the Phase I Permit and the CWA, 33 U.S.C. § 1311(a) and 1342(p), as owner and/or operator of the MS4, the County has caused and contributed to, and is causing and contributing to, exceedance of water-quality standards to waters of the state and the United States.

90. Upon information and belief, these violations committed by the County are continuing or are reasonably likely to occur until the County is enjoined from doing so. Local rain events with over 0.1 inches of precipitation have been reliably followed by turbidity samples in the Railroad Ditches that exceed state water-quality criteria. Without the imposition of civil penalties and injunctive relief, Defendant is likely to continue to violate the CWA and the Phase I Permit to the injury of PVJR and others.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

91. Any and all additional violations of the CWA which occur after those described in the Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

**Second Cause of Action**

**Failure to Reduce the Discharge of Pollutants to the Maximum Extent Practicable and to Use AKART (Violations of 33 U.S.C. §§ 1311 and 1342)**

92. PVJR realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

93. The Phase I permit requires the County to "reduce the discharge of pollutants to the Maximum Extent Practicable" and to use "[AKART] to prevent and control pollution of waters of the State of Washington." Ex. 2 at 7 (condition S4.C, D).

94. Since at least April 2024, the County has failed to implement control measures that reduce the discharge of pollutants from its MS4 to the maximum extent practicable and to meet AKART requirements. The County's failure to do so is evidenced by, among other things, the systemic and continuous exceedances of the turbidity criteria set forth in WAC 173-201A-200(1)(e) in water outfalling from the County's NE 99th Street outfall and North 72nd Street outfall to the West Railroad Ditch, and within the Railroad Ditches.

95. Each day on which the County operates its MS4 without controlling discharges of pollutants to the maximum extent practicable or meeting AKART requirements is a separate and distinct violation of the Phase I Permit and CWA §§ 301 and 402, 33 U.S.C. §§ 1311 and 1342. These violations are ongoing.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

96. Without the imposition of civil penalties and injunctive relief, Defendant is likely to continue to violate the CWA and the Phase I Permit to the injury of PVJR and others.

97. Any and all additional violations of the CWA which occur after those described in the Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

**<u>Third Cause of Action</u>**

**Failure to Prevent or Reduce Pollutants for New and Existing Development**

**(Violations of 33 U.S.C. §§ 1311 and 1342)**

98. PVJR realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

99. The Phase I Permit requires the County to implement a Stormwater Management for Existing Development Program to prevent or reduce impacts to waters of the State caused by discharges from the MS4. The program shall consider impacts caused by stormwater discharges from areas of existing development, including runoff from highways, streets and roads owned or operated by the Permittee. Ex. 2 at 23 (condition S5.C.7).

100. The Phase I Permit requires the County to implement a program to reduce pollutants in runoff from areas of existing development that discharge to the MS4. *Id.* at 24 (condition S5.C.8.)

101. The Phase I Permit requires the County to implement a program to prevent and control the impacts of runoff from new development. *Id.* at 15 (condition S5.C.5).

102. The County has violated condition S5.C of the Phase I Permit by failing to implement a program to control runoff and reduce pollutants in runoff from areas of new



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

and existing development that discharge to the MS4, as evidenced by the past and ongoing incidents of turbid water entering and being conveyed through the County's MS4 from sources upstream of the PVJR Properties.

103. Each day on which the County operates its MS4 without taking action to prevent and control runoff and reduce pollutants in runoff from areas of new and existing development is a separate and distinct violation of the Phase I Permit and CWA §§ 301 and 402, 33 U.S.C. 1311 and 1342. These violations are ongoing.

104. Without the imposition of civil penalties and injunctive relief, Defendant is likely to continue to violate the CWA and the Phase I Permit to the injury of PVJR and others.

105. Any and all additional violations of the CWA which occur after those described in the Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

## Fourth Cause of Action

### Violations of the Phase I Permit IDDE Requirements

### (Violations of 33 U.S.C. §§ 1311 and 1342)

106. PVJR realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

107. The Phase I Permit requires the County to detect, characterize, trace, and eliminate illicit connections and illicit discharges into the MS4.

108. When the County notified Ecology of its violations of the Phase I Permit in December 2023 through January 2024, it did not disclose or address pollutant contributions entering the County's MS4 from any location upstream of the PVJR Properties.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

109. Turbidity sampling conducted by PVJR upstream of the PVJR Properties between April 2024 and March 2026 confirms significant turbidity contributions entering the County's MS4 upstream of PVJR Properties.

110. On information and belief, the County has not identified, characterized, traced, or eliminated such upstream sources of turbidity discharging directly into the Railroad Ditches. As a result, the County has failed to implement an IDDE program meeting the requirements of the Phase I Permit, including condition S5.C.9.

111. Upon information and belief, these violations committed by the County are continuing or are reasonably likely to occur until enjoined from doing so. Without the imposition of civil penalties and injunctive relief, Defendant is likely to continue to violate the CWA and the Phase I Permit to the injury of PVJR and others.

112. Any and all additional violations of the CWA which occur after those described in the Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

## Fifth Cause of Action

**Violation of the Phase I Permit Requirement to Take Corrective Action**

**(Violations of 33 U.S.C. §§ 1311 and 1342)**

113. PVJR realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

114. Despite having knowledge of discharges of polluted water both to and from its MS4 that constitute threats to the environment, the County has failed to take appropriate action to correct, minimize, or mitigate the threat to the environment, in violation of conditions G1, G3, G6, and G20 of the Phase I Permit.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

115. In violation of the Phase I Permit and the CWA, 33 U.S.C. §§ 1311(a) and 1342(p), as owner and/or operator of the MS4, the County has caused and contributed to, and is causing and contributing to, exceedance of water-quality standards in waters of the State and the United States.

116. Upon information and belief, these violations committed by the County are continuing or are reasonably likely to occur until enjoined from doing so. Without the imposition of civil penalties and injunctive relief, Defendant is likely to continue to violate the CWA and the Phase I Permit to the injury of PVJR and others.

117. Any and all additional violations of the CWA which occur after those described in the Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

## Sixth Cause of Action

**Failure to Maintain MS4 Facilities (Violations of 33 U.S.C. §§ 1311 and 1342)**

118. PVJR realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

119. Condition S5.C.10 of the Phase I Permit requires the County to maintain its stormwater facilities to prevent or reduce stormwater impacts.

120. The County has failed, and continues to fail, to maintain its stormwater facilities.

121. Since at least 2018, the County's MS4 facilities have caused flooding and ponding over nearby properties and polluted discharges into Curtin Creek. The County has not modified or improved these MS4 facilities.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

122. In violation of the Phase I Permit and the CWA, 33 U.S.C. § 1311 and 1342, as owner and/or operator of the MS4, the County has failed to conduct repairs or take appropriate maintenance action.

123. Upon information and belief, these violations committed by the County are continuing or are reasonably likely to occur until enjoined from doing so. Without the imposition of civil penalties and injunctive relief, Defendant is likely to continue to violate the CWA and the Phase I Permit to the injury of PVJR and others.

124. Any and all additional violations of the CWA which occur after those described in the Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

**Seventh Cause of Action**

**Violation of the Phase I Permit for Inaccurate MS4 Mapping**

**(Violations of 33 U.S.C. §§ 1311 and 1342)**

125. PVJR realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

126. The Phase I Permit requires the County to maintain mapping data for a list of identified features. Ex. 2 at 12 (condition S5.C.2). Implicit in this requirement is that the mapping accurately depicts the pipes, ditches, catch basins, inlets, and related conveyances owned or operated by the County and designed or used for collecting and conveying stormwater.

127. The County's stormwater map does not identify an existing 24-inch culvert that conveys stormwater from the West Railroad Ditch to the East Railroad Ditch in the vicinity of the PVJR parcels.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

128. The County's stormwater map identifies the Railroad Ditches as stormwater facilities maintained by the County, but County staff disclaims that those facilities exist as part of the County's MS4.

129. The County has improperly relied on and continues to rely on inaccurate MS4 maps when permitting upstream development in violation of the Phase I Permit.

130. To the extent that the Railroad Ditches are not part of the County's MS4, the County is allowing untreated stormwater discharges from the Clark County North 72nd Street outfall and the NE 99th Street outfall to exit the MS4 system, without prior treatment in violation of the Phase I Permit. *Id.* at 7 (conditions S4.C, S4.D), 66–67 (condition G4).

131. Each and every day on which Defendant fails to maintain an accurate MS4 map and relies on inaccurate MS4 maps is a separate and distinct violation of the Phase I Permit and CWA sections 301(a) and 402, 33 U.S.C. §§ 1311(a) and 1342.

132. Upon information and belief, these violations committed by the County are continuing or are reasonably likely to occur until enjoined from doing so. Without the imposition of civil penalties and injunctive relief, Defendant is likely to continue to violate the CWA and the Phase I Permit to the injury of PVJR and others.

133. Any and all additional violations of the CWA which occur after those described in the Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

## VII. RELIEF REQUESTED

1. Wherefore, PVJR respectfully requests that this Court grant the following relief:

A. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201, that the County has violated and remains in violation of the Phase I Permit and sections 301 and 402 of the



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

CWA, 33 U.S.C. §§ 1311(a) and 1342(p), for causing and contributing to discharges of stormwater containing pollutants in exceedance of water-quality standards;

B. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201, that the County has violated and remains in violation of the Phase I Permit and sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p), for failure to reduce the discharge of pollutants to the maximum extent practicable and to use AKART;

C. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201, that the County has violated and remains in violation of the Phase I Permit and sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p), for Phase I Permit violations based on the County's failure to prevent or reduce pollutants for new and existing development;

D. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201, that the County has violated and remains in violation of the Phase I Permit and sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p), for failing to implement its SWMP;

E. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201, that the County has violated and remains in violation of the Phase I Permit and sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p), for Phase I Permit violations based on the County's failure to maintain a proper IDDE Program;

F. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201, that the County has violated and remains in violation of the Phase I Permit and sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p), for failing to take action to correct, minimize, or mitigate the threat to the environment;

G. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201, that the County has violated and remains in violation of the Phase I Permit and sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p), for failure to maintain MS4 facilities.



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

H. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201, that the County has violated and remains in violation of the Phase I Permit and sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(p), for inaccurate MS4 mapping;

I. Issue an injunction enjoining the County from violating the requirements of the Phase I Permit as provided under § 505(a) of the CWA, 33 U.S.C. § 1365(a);

J. Order the Defendant to take the specific actions necessary to remediate the environmental harm caused by its violations and to bring its MS4 discharges into compliance with the Phase I Permit and the CWA;

K. Order the County to perform IDDE source tracing by a qualified independent professional to identify, characterize, trace, and eliminate or control upstream sources of turbidity and other pollutants entering the Railroad Ditches, Curtin Creek, and associated receiving waters;

L. Order the County to correct its MS4 mapping to accurately identify the relevant outfalls, ditches, culverts, discharge points, stormwater treatment and flow-control facilities, connections, and receiving waters in the area of the PVJR Properties, the Railroad Ditches, the Curtin Creek Natural Area, and Curtin Creek;

M. Order the County to comply with all conditions of the Phase I Permit;

N. Award civil penalties as provided under §§ 505(a) and 309(d) of the CWA, 33 U.S.C. §§ 1365(a) and 1319(d) and its implementing regulations at 40 C.F.R. § 19.4;

O. Award PVJR its litigation expenses, including reasonable attorney fees and expert witness fees, as provided under section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

P. Grant such additional relief as this Court deems appropriate.

//

//



Van Ness Feldman LLP
1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

Respectfully submitted this 3rd day of September, 2026.

VAN NESS FELDMAN LLP

*/s/ Jenna R. Mandell-Rice*
Jenna R. Mandell-Rice, WSBA No. 49667

*/s/ Patrick O. Daugherty**
Patrick O. Daugherty, WSBA No. 65650

*/s/ Tanya Helbig*
Tanya Helbig, WSBA No. 63030

1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
T: 206-623-9372
E: jrm@vnf.com; pod@vnf.com;
thelbig@vnf.com

*Attorneys for Portland Vancouver Junction Railroad, LLC*

*Application for admission will be forthcoming.